IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THURMAN MEARIN,<br>        Plaintiff, | )<br>)<br>) |
| vs. | ) Civil Action No. 11-571<br>) Magistrate Judge Maureen P. Kelly<br>) |
| LOUIS FOLINO, Superintendent,<br>ROBERT B. MACINTYRE, Chief Hearing<br>Examiner, F. NUNEX, Hearing Examiner,<br>SUSAN COWAN, Program Review<br>Committee, ROBERT DIETZ, Program<br>Review Committee, Mike Ivan, Program<br>Review Committee, MAJOT LORINDA<br>WINFILED, LT. E. GREGO, LT. ROBERT<br>L. KENNEDY, LT. S.P. DURCO,<br>WALLACE DITTSWORTH, Food<br>Manager, CARLA SWARTZ, Unit<br>Manager, PAUL PALYA, Unit Manager,<br>DORINDA VARNER, Chief Grievance<br>Officer, M. DIALESANDOR, Program<br>Review Committee, DR. YANAKS,<br>Psychologist, DAN DAVIS, Assistant<br>Superintendent, SGT. YOUNKIN, R.H.U.,<br>COL. WILCHER, R.H.U., COL.<br>MARTAIN, R.H.U., COL. GIFFORD,<br>R.H.U., COL. MOORE, COL.<br>HARKLEROAD, LT. D. MITCHELL,<br>COL. W. SHAWLEY. R.H.U., COL.<br>KNIGHT, R.H.U., COL. BARCHIESI,<br>R.H.U., COL. A. SHAWLEY, R.H.U,<br>PETE VIDONISH, Unit Manager, Program<br>Review Com.<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Re: ECF Nos. 68, 70<br>)<br>)<br>) |

MEMORANDUM ORDER

**KELLY, Magistrate Judge**

Plaintiff, Thurman Mearin ("Plaintiff"), is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution at Greene ("SCI Greene"). Plaintiff has filed this civil rights suit

pursuant to 42 U.S.C. § 1983, alleging that Defendants have engaged in a campaign of harassment and retaliation against him for filing various grievances and lawsuits against Defendant Louis S. Folino ("Folino"), and other DOC staff members.  ECF No. 23.  Specifically, Plaintiff claims that Defendants have repeatedly filed false misconducts against him; deprived him of his right to call witnesses at the misconduct hearings; refused to review videotapes relevant to the misconducts; confiscated and/or destroyed his legal papers; denied him single cell status; falsified his medical records; and deprived him of food in violation of his rights provided by the First, Eighth and Fourteenth Amendments to the United States Constitution.  Id.

Presently before the Court is a Motion to Compel Discovery that was submitted by Plaintiff on August 20, 2012, ECF No. 68, and a Supplemental Motion to Compel Discovery submitted by Plaintiff on September 4, 2012, ECF No. 70.  For the reasons that follow, both Motions will be denied.[1]

## I.  LEGAL STANDARD

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." Hickman v. Taylor, 329 U.S. 495, 501 (1947).  The polestar of discovery is relevance. Relevance for discovery purposes is defined broadly.

The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable,

---

[1] Because Plaintiff does not make any new arguments in his Supplemental Motion but merely reiterates his dissatisfaction with Defendants' discovery responses expressed in his first Motion, hereinafter the Court will refer to the two Motions collectively as "the Motion."

however, is defeasible." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). Discovery may properly be limited where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). When there is no doubt about relevance, however, a court should tend toward permitting discovery. Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A., 144 F.R.D. 258, 265-66 (E.D. Pa.1992).

Federal Rule of Civil Procedure 37 allows a party who has received evasive or incomplete discovery responses to seek a court order compelling additional disclosure or discovery. "The party seeking the order to compel must demonstrate the relevance of the information sought. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." Option One Mortgage Corp. v. Fitzgerald, 2009 WL 648986 at *2 (M.D. Pa. Mar. 11, 2009).

## II.     DISCUSSION

### A.     First Request for Interrogatories

#### 1.     Interrogatory No. 1A

Plaintiff initially takes issue with Defendants' response to Interrogatory No. 1A which revolves around a memorandum written to him by Defendant Folino on December 4, 2006, in which Folino addresses Plaintiff's appeal of his transfer to Administrative Custody. ECF No. 68-4, pp. 1-2; ECF No. 4-37. Folino reported in the memorandum that he would not alter the

judgment of the Program Review Committee, which determined that Plaintiff was properly placed in Administrative Custody, given Plaintiff's "history of adjustment difficulties while incarcerated." ECF No. 4-37.

In Interrogatory No. 1A, Plaintiff seeks a copy of the transfer petition, including the names of the staff members who authored it. ECF No. 68, ¶¶ 1, 2; ECF No. 68-4, pp. 1-2. Defendants objected to the request stating that the transfer petition is privileged and confidential. ECF No. 68-5, ¶ 1.

Defendants presently stand by their objection and, in support thereof, have offered the Declaration of Craig Haywood ("Haywood"), the Security Captain at SCI Green, in which he states that transfer petitions, amongst other things, contain privileged, confidential, and sensitive information, much of which is intentionally not disclosed to the subject inmate as it could pose a risk to the security of the institution and the safety of staff and inmates. ECF No. 74-1, ¶ 4. Haywood also declares that the information contained in the transfer petitions could permit an inmate to manipulate his programming and that providing the inmate with the names of those authoring the petitions, or having a role in the decision to transfer an inmate, would invite the inmate to retaliate against the staff member and hinder staff members from being candid. Id.

The Court finds Defendants' arguments compelling. Because it is clear that providing Plaintiff with the transfer petition and the names of the staff members who authored it would not only create a security risk but would permit Plaintiff to manipulate his programming and thwart the purpose of the program reviews, Plaintiff's Motion is DENIED as to this request. See Smith v. Donate, 2011 WL 5593160 at *4 (M.D. Pa. Nov. 17, 2011) (recognizing that in a prison

setting an inmate's request for certain information can raise security concerns and implicate a legitimate governmental privilege requiring confidentiality).[2]

   2.    **Interrogatory No. 3**

Plaintiff also contends that the responses provided by Defendant Carla Swartz ("Swartz") to Interrogatory No. 3, are "evasive." ECF No. 68, ¶¶ 3, 4. Therein, Plaintiff asked Swartz: (a) whether it is normal for an inmate who has Post Traumatic Stress Disorder to have 50 "cellies" in 26 months; (b) what procedures she follows when a prisoner tells her he is not compatible with other prisoners and needs to be by himself; (c) whether it is the practice to place mental health prisoners in cells with others; (d) whether she has ever placed a mental health prisoner in a cell with Plaintiff; and (e) what makes her qualified to provide answers to these questions. ECF No. 68-4, ¶ 3. Defendant Swartz's corresponding responses were as follows: (a) that Plaintiff does not have any psychiatric reports indicating that he has any restrictions on cell mates; (b) that Plaintiff has been reviewed for single cell status and does not meet the criteria; (c) that an inmate's mental health status is not a criteria for "celling" unless an inmate meets the criteria for placement in the Special Needs Unit; (d) that, consequently, it is possible that inmates on the "mental health tracking roster," but who have not met the criteria for the Special Needs Unit, have been celled with Plaintiff; and (e) that Swartz is employed as a Corrections Unit Manager. ECF No. 68-5, ¶¶ 3(a)-3(e).

Swartz therefore has responded to each of Plaintiff's questions and has done so in a manner relevant to him. Plaintiff's disappointment with those responses does not provide a basis

---

[2] The Court also points out that Plaintiff's transfer took place sometime prior to December 4, 2006, when Folino wrote the memorandum. Plaintiff, however, did not initiate this case until May of 2011. It therefore appears that any claims based on conduct that occurred in 2006 would be barred by the statute of limitations rendering the transfer petition irrelevant. See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (finding that the plaintiff's claims brought under section 1983 are subject to a two year statute of limitations).

for compelling Defendants to provide another. As such, the Motion is DENIED with respect to this request.

3. **Interrogatory No. 5C**

In Interrogatory No. 5C, Plaintiff asks Defendant Swartz to explain why she stated on a request slip that "Plaintiff is a [sic] H code because of having a [sic] escape history and this was decided in 2007," and to provide Plaintiff with a copy of the document which shows the vote of the institutional staff members who made the decision to categorize him as "H code." ECF No. 68-4, ¶¶ 5, 5C. Defendant Swartz responded that she made the statement on the request slip because Plaintiff asked about his custody level; however, she declined to provide Plaintiff with the vote sheet maintaining that it contains information that is privileged and confidential and that the information contained therein could be manipulated by the inmate to affect his programing as well as pose a security risk to staff. ECF No. 68-5, ¶¶ 5, 5C.

Presently, Defendants again point to Captain Haywood's Declaration in which he reiterates that vote sheets, like transfer petitions, contain privileged and confidential, much of which is intentionally not disclosed to the subject as it could pose a risk to the security of the institution and the safety of staff and inmates. ECF No. 74-1, ¶ 4. Haywood also reiterates that the information contained in the vote sheets could permit an inmate to manipulate his programming and, more importantly, that providing the inmate with the names of those who voted to designate him "H code" would pose a security risk to those members of the staff. Id.

The Court agrees. Because providing Plaintiff with the names of the staff members who voted to maintain Plaintiff's H code designation is confidential and privileged and would present an obvious security risk, Plaintiff's Motion in this regard is DENIED.

6

B.  **Second Request for the Production of Documents**

1.  **Request No. 5**

Plaintiff has requested that Defendants provide him with "the names of the staff members who held the 'staffing' and the correctional officer who was present, in 2005." ECF No. 68-6, ¶ 5. Defendants objected to the request as irrelevant and unlikely to lead to the discovery of admissible evidence as the "staffing" (which apparently refers to a meeting where a decision regarding an inmate is made) to which Plaintiff refers took place in 2005, which was over six years before the instant suit was filed. ECF No. 68-7, ¶5. As such, the information Plaintiff seeks cannot pertain to any timely claim as is irrelevant. ECF No. 74, ¶¶ 11, 12. See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d at 599. Moreover, Plaintiff has not suggested how the names of the individuals who attended the 2005 "staffing" are relevant to the claims raised in this case but merely concludes that they are "essential to this suit." ECF No. 68, ¶¶ 7, 8. Under these circumstances, coupled with the obvious security risk to the staff members at issue, Plaintiff's Motion in this regard is DENIED.

2.  **Request No. 6**

In his Second Request for the Production of Documents, Plaintiff also asks that Defendants provide him with the DC-46 vote sheets that were signed by the staff in 2007, 2008, 2009, 2010, 2011, and 2012. ECF No. 68-6, ¶ 6. Defendants have declined to produce these documents arguing that they are privileged and confidential and that disclosure would present both a security risk and allow Plaintiff to manipulate his treatment. ECF No. 68-7, ¶¶ 6, 7. Indeed, citing to Captain Haywood's Declaration, this Court has already found that vote sheets, particularly the names of the staff members who signed them, are privileged and confidential and that providing Plaintiff with the information contained therein would pose a security risk to staff

7

members and allow Plaintiff to manipulate his programming. See ECF No. 74-1, ¶ 4. As such, the Motion is DENIED as to the cited vote sheets. See ECF No. 68, ¶ 8.

### 3. Request No. 7

Plaintiff also seeks his Mental Health Records (DC-97) from 1990 to the present. ECF No. 68-6, ¶ 7. Defendants declined to produce these documents arguing that they are privileged and confidential. ECF No. 68-7, ¶ 7. Indeed, Captain Haywood has attested to the fact that "[a]n inmate's psychiatric/mental health records, including but not limited to the inmate's DC-97 mental health referral forms, contain privileged, confidential, and sensitive information the disclosure of which poses a risk to the security of the institution and the safety of staff and inmates." ECF No. 74-1, ¶ 5. Captain Haywood also states that allowing an inmate to be privy to his mental health records could permit the inmate to manipulate his treatment and frustrate the goals of his treatment by interfering with a candid analysis of the inmate. Moreover, divulging an inmate's mental health records would subject any staff member involved in Plaintiff's treatment to retaliation. Id.

In addition to finding Captain Haywood's Declaration persuasive, the Court also finds that Plaintiff's request for records from 1990 is overbroad and unduly burdensome particularly as Plaintiff has not demonstrated what relevance his records have to his retaliation claims. To the extent that Plaintiff seeks confirmation of his assertion that he has a "history of suffering from Post-Traumatic Stress Disorder (PTSD)" and "was in a cell by [him]self for many years," ECF No. 23, ¶ 36, it is noteworthy that Plaintiff has not alleged that he has actually has been diagnosed with PTSD, when he was diagnosed, or by whom. Nor has Plaintiff specifically alleged that a physician ordered that he be given single cell status as a result of being diagnosed

with PTSD. Moreover, it would appear that if a doctor has made such a diagnosis, Plaintiff has other sources from which he can obtain the information he seeks.

Further, it is apparent from the documents that Plaintiff has submitted with his Complaint that the "psych department" has evaluated Plaintiff and found that he does not fit the criteria for Z-Code (single cell status); that review of his records show that he has not been assigned Z-Code since 1993; and that merely having a mental health diagnosis is not sufficient basis for a Z-Code designation. ECF Nos. 4-4; 4-18; 4-34. Because the Court finds Captain Haywood's assessment compelling, and also finds that Plaintiff's request for 22 years of his metal health records is overbroad, if not irrelevant, the Motion in this regard is DENIED.

### C.    First Request for the Production of Documents

#### 1.    Request No. 2

Plaintiff has requested "any and all Security Reports" relating to the infraction that caused Plaintiff to be placed on the "Institutional Escape Risk List" and "labeled a H code High Risk Prisoner." ECF No. 68-8, ¶ 2. Not surprisingly, Defendants object to disclosing any security reports as they are privileged and confidential and because doing so could compromise security within the institution. ECF No. 68-9, ¶ 2; ECF No. 74, ¶¶ 18, 19. Indeed, Captain Haywood has made the same assertions with respect to security reports that he has made concerning transfer petitions and vote sheets, namely that security reports contain privileged, confidential and sensitive information disclosure of which poses a risk to the security of the institution and the safety of the staff and inmates. ECF No. 74-1, ¶ 4. Haywood also reiterates that the information contained in the security reports could permit an inmate to manipulate his programming and pose a threat to any staff members who contributed to the document or were otherwise involved. Id.

9

It is not difficult for the Court to find that any information contained in a "security report" generated at a state correctional facility would be privileged and confidential and that disclosure of such information would create a security risk. Moreover, it would appear that Plaintiff is able to obtain information regarding his continued designation as a high risk prisoner from other sources. As such, the Court will DENY Plaintiff's Motion as to the security reports.

### 2. Request No. 4

Similarly, it is clear that any manuals setting forth drug interdiction procedures within the institution relate to the operations and security of the facility and are privileged and confidential. See Paluch v. Dawson, 2007 WL 4375937 at *5 (W.D. Pa. Dec. 12, 2007). In request for Production No. 4, Plaintiffs seeks just that. ECF No. 68-8, ¶ 4. Specifically, Plaintiff has asked Defendants to produce the procedures manual for policy No. 6.3.12, which Captain Haywood has indicated is the DOC's Drug Interdiction Procedures Manual and that it contains detailed information regarding the DOC's drug interdiction and enforcement practices. ECF No. 74-1, ¶ 3. Captain Haywood declares that disclosure of any portion of the manual, including Section 2 to which Plaintiff particularly cites, "would potentially enable inmates to frustrate the Department's drug enforcement and interdiction efforts," and would pose a significant risk to the security of the institution and safety of the staff and inmates. ECF No. 74-1, ¶¶ 2, 3. This, coupled with the absence of any apparent relevancy to Plaintiff's claims, compels the Court to DENY Plaintiff's Motion in this regard.

### 3. Request No. 7

In Plaintiff's First Request for the Production of Documents he also asks Defendants to provide him with his DC-46 records, DC-43 records, DC-97 records, DC-186 records, DC-14 records, and DC-17 records in their entirety. Plaintiff argues that these documents are relevant

because they will "reveal any and all negative behavior concerning plaintiff during his 30 years of incarceration." ECF No. 68, ¶ 14. Defendants have represented that these records consist of: vote sheets (DC- DC-46); Correctional plans (DC-43); Mental Health Referral Forms (DC-97); Separation files (DC-186); Cumulative Adjustment Records (DC-14); and Adjustment records for Security Level 5 inmates (DC-17 or DC-17X), and objected to Plaintiff's request generally as being overbroad, unduly burdensome, irrelevant and privileged and confidential. ECF No. 68-9, ¶ 7.

Defendants presently stand by that objection pointing out that the DC-17X files are only generated when an inmate is in the Restricted Housing Unit and that Plaintiff has not been housed in the RHU since 2007. Consequently, Defendants argue, correctly so, that any claim based on information contained in those documents would be barred by the statute of limitations. ECF No. 74, ¶ 25. See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d at 599. Plaintiff's DC-17X records, therefore, are irrelevant an unlikely to lead to the discovery of admissible information.

With respect to the remaining records sought by Plaintiff, his requests for thirty years of records are overbroad and unduly burdensome particularly that he has only been incarcerated at SCI Green since 2005. Moreover, to the extent that Plaintiff seeks these records to demonstrate the absence of any negative behavior on his part that would warrant a high risk designation, his own Complaint shows that he has not been misconduct free. Indeed, Plaintiff has indicated therein that he has received at least three misconducts while at SCI Greene.[3] ECF No. 23, ¶ 4; ECF Nos. 4-23; 4-28, p. 8; 4-36.

---

[3] Although the Court recognizes that Plaintiff claims these misconducts were false and made in retaliation for his having filed grievances, it is well established that the finding of guilt of a misconduct based on some evidence that he engaged in the conduct at issue precludes success on a retaliation claim as the finding of guilt establishes that Defendants would have taken the same action regardless of any protected activity that the Plaintiff may have

11

Further, Captain Haywood has attested to the fact that vote sheets (DC- DC-46); Mental Health Referral Forms (DC-97); Separation files (DC-186); and Cumulative Adjustment Records (DC-14), are privileged and confidential as they contain sensitive information that could pose a security risk to staff, inmates and the institution as a whole if disclosed to an inmate. ECF No. 74-1, ¶¶ 4, 5. Captain Haywood also states that providing an inmate with these records would allow the prisoner to not only manipulate his programming and treatment but enable him to retaliate against staff members who have provided information in the documents and impede the staff from being candid. Id.

As such, the Court DENIES Plaintiff's request for his entire DC-46, DC-43, DC-97, DC-186, DC-14, and DC-17 records.

### 4. Request No. 9

Finally, Plaintiff seeks a printout identifying every cellmate he has had while incarcerated at SCI Greene from 2007 until the present, which he generally contends is essential to prove his claims of retaliation. ECF No. 68-8, ¶ 9; ECF No. 68, ¶ 16. Defendants represent that the DOC does not maintain a document that lists an inmate's cellmates and, thus, there is nothing for them to provide. Alternatively, Defendants argue that to otherwise obtain this information would be unduly burdensome. ECF No. 74, ¶ 29; ECF No. 68-9, ¶ 9. The Court agrees.

It appears clear that a party cannot produce that which it does not have or does not exist. Moreover, Plaintiff himself allows that over the course of four years he has had 109 cellmates. ECF No. 68, ¶ 16. Requiring Defendants to search for such information, even assuming that it could be obtained at this juncture, would be overly burdensome. Further, it is not at all clear

---

engaged in. Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002), See Dunbar v. Barone, 2012 WL 2775024 at *2 (3d Cir. July 10, 2012); Israel v. Superintendent of SCI Fayette, 2009 WL 693248 at *11 (W.D Pa. Mar. 13, 2009).

what relevance the identity of his cellmates going back to 2007 has on his claims. Consequently, the Motion in this regard is DENIED.

The Court also recognizes that Plaintiff has asked the Court to conduct an *in camera* inspection of the documents he seeks. Under the circumstances presented here, however, the Court declines to do so. To the extent that the Court has denied Plaintiff's Motion based on confidentiality and security concerns, it appears that the confidential information that would create the security concerns is precisely the information that Plaintiff seeks. See Discussion, *infra*, ¶¶ A.3.; B.1.; B.2.; C.2. Thus, an *in camera* review of these documents would serve no purpose. Further, to the extent that the Court has found that Plaintiff has either failed to demonstrate the relevance of the information he seeks or that his requests are overbroad and/or unduly burdensome, he has not shown his entitled to the documents in the first instance and, thus, is not entitled to *in camera* review. See Discussion, *infra*, ¶¶ A.1.; B.3.; C.2.; C.3.; C.4.

AND NOW, this 24t$^h$ day of September, 2012, IT IS HEREBY ORDERED that Plaintiff's Motions to Compel, ECF Nos. 68, 70, are DENIED.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: Thurman Mearin
AM-8063
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

All counsel of record by electronic filing