IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THURMAN MEARIN, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 11-571 |
| vs. | ) |
| | ) District Judge Nora Barry Fischer |
| LOUIS FOLINO, Superintendent, | ) Magistrate Judge Maureen P. Kelly |
| ROBERT B. MACINTYRE, Chief Hearing | ) |
| Examiner, F. NUNEX, Hearing Examiner, | ) Re: ECF No. 94 |
| SUSAN COWAN, Program Review | ) |
| Committee, ROBERT DIETZ, Program | ) |
| Review Committee, MIKE IVAN, Program | ) |
| Review Committee, MAJOT LORINDA | ) |
| WINFILED, LT. E. GREGO, LT. ROBERT | ) |
| L. KENNEDY, LT. S.P. DURCO, | ) |
| WALLACE DITTSWORTH, Food | ) |
| Manager, CARLA SWARTZ, Unit | ) |
| Manager, PAUL PALYA, Unit Manager, | ) |
| DORINDA VARNER, Chief Grievance | ) |
| Officer, M. DIALESANDOR, Program | ) |
| Review Committee, DR. YANAKS, | ) |
| Psychologist, DAN DAVIS, Assistant | ) |
| Superintendent, SGT. YOUNKIN, R.H.U., | ) |
| COL. WILCHER, R.H.U., COL. | ) |
| MARTAIN, R.H.U., COL. GIFFORD, | ) |
| R.H.U., COL. MOORE, COL. | ) |
| HARKLEROAD, LT. D. MITCHELL, | ) |
| COL. W. SHAWLEY. R.H.U., COL. | ) |
| KNIGHT, R.H.U., COL. BARCHIESI, | ) |
| R.H.U., COL. A. SHAWLEY, R.H.U., | ) |
| PETE VIDONISH, Unit Manager, Program | ) |
| Review Com. | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

Plaintiff, Thurman Mearin ("Plaintiff"), is a state prisoner in the custody of the

Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State

Correctional Institution at Greene ("SCI Greene").  Plaintiff has filed this civil rights suit

pursuant to 42 U.S.C. § 1983, alleging that Defendants, who are all employed at SCI Greene, have engaged in a campaign of harassment and retaliation against him for filing various grievances and lawsuits against Defendant Louis S. Folino ("Folino"), and other DOC staff members. ECF No. 23. Specifically, Plaintiff claims that Defendants have repeatedly filed false misconducts against him; deprived him of his right to call witnesses at the misconduct hearings; refused to review videotapes relevant to the misconducts; confiscated and/or destroyed his legal papers; denied him single cell status; falsified his medical records; and deprived him of food in violation of his rights provided by the First, Eighth and Fourteenth Amendments to the United States Constitution. Id.

Presently before the Court is a Motion for Summary Judgment ("the Motion") submitted by Defendants. ECF No. 94. For the following reasons, it is respectfully recommended that the Motion be granted.

## II.    REPORT

### A.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Scott v. Harris, 550 U.S. 372, 380 (2007), *quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party.  Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### B.    DISCUSSION

#### 1.    Res Judicata/Collateral Estoppel

Defendants first argue that Plaintiff's claims of retaliation brought against Defendants Pete Vidonish ("Vidonish"), Folino, Carla Swartz ("Swartz") and Dorina Varner ("Varner") are barred by res judicata or, more specifically, collateral estoppel.[1]

---

[1] The doctrine of res judicata concerns the preclusive effects of former adjudication which, as noted by the United States Supreme Court, have been "discussed in varying and, at times, seemingly conflicting terminology."  Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).   The term "res judicata" generally encompasses two preclusion concepts: "issue preclusion" and "claim preclusion."  Id., *citing* Restatement (Second) of Judgments,

"Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." <u>Walker v. Horn</u>, 385 F.3d 321, 336-37 (3d Cir. 2004), *quoting* <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 467 n.6 (1982). Before the doctrine may be invoked, the following conditions must exist: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. <u>Id.</u>

Here, contrary to Defendants' assertion, it does not appear that the first requirement for collateral estoppel has been met. Although Defendants argue that the retaliation claims brought against Defendants Vidonish, Folino, Swartz and Varner presently before the Court were already litigated by this Court in *Mearin v. Vidonish*, C.A. No. 2:08-cv-597, the issue decided in that case was whether certain actions allegedly taken by Defendants Vidonish, Folino, Swartz and Varner between April of 2006[2] and December of 2008, were in retaliation for Plaintiff filing a prisoner civil rights suit against Captain Dohman who worked at SCI Graterford where Plaintiff was housed before he was transferred to SCI Greene. <u>See id.</u> at ECF Nos. 16, 19, 71. The issue in this case, however, is whether the actions of Defendants allegedly taken after October 27, 2009, were in retaliation for Plaintiff having filed a lawsuit against Dohman as well as

---

Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981). Issue preclusion, which is also referred to as collateral estoppel, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. <u>Id.</u>, *citing* Restatement, supra, § 27. Claim preclusion, on the other hand, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." <u>Id.</u> Here, it is clear that Defendants are proceeding under a theory of collateral estoppel or issue preclusion.

[2] Plaintiff's claims revolving around conduct that occurred prior to April of 2006, were dismissed as barred by the statute of limitations. <u>Id.</u> at ECF Nos. 71, 75.

"Superintendent Folino and Staff." ECF No. 23, ¶ 1, 2. These issues are not identical but involve different actions allegedly taken by Defendants. Accordingly, the doctrine of collateral estoppel does not apply or serve to bar Plaintiff's current claims.

## 2. Statute of Limitations

Defendants also argue that all of Plaintiff's claims should be dismissed because they are barred by the applicable two year statute of limitations. See Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (federal courts apply the state statute of limitations for personal injury in Section 1983 cases which in Pennsylvania is two years). See also 42 Pa. C.S.A. § 5524. Defendants contend that because Plaintiff's Complaint was filed on April 24, 2012, any claims concerning events that occurred before April 24, 2010, are barred, and that because all of Plaintiff's claims revolve around events that occurred prior to that date, the Complaint should be dismissed in its entirety.

Defendants' argument, however, is somewhat disingenuous as it is clear from the record that Plaintiff's Complaint was filed on May 24, 2011, and not April 24, 2012. See ECF No. 4. Although the Complaint was ultimately re-filed as an Amended Complaint on April 20, 2012 (not the 24th), in order to include missing pages, it does not negate the fact that Plaintiff's Complaint was filed and his claims were brought before the Court on May 24, 2011. See ECF No. 23.[3] As such, only claims that concern events that occurred prior to May 24, 2009, are

---

[3] It should also be noted here that in the interim, on October 20, 2011, Plaintiff submitted an Amended Complaint bringing claims against three new/additional defendants. See ECF No. 12. In response to this Court's subsequent Order directing Plaintiff to file a single consolidated Complaint bringing all the claims he wished to pursue and naming all the defendants against whom he wished to proceed, Plaintiff indicated that he wished to forego amending the Complaint and that he would proceed with the Complaint as originally filed on May 24, 2011. See ECF Nos. 17, 19, 3/13/2012 Text Order. A subsequent request by Plaintiff to amend the Complaint so as to add the same three additional defendants was denied by the Court on July 25, 2012. See ECF Nos. 60, 61.

untimely.   With one exception, however, all of Plaintiff's claims revolve around events that occurred in June of 2009 and thereafter and, thus, are not barred by the statute of limitations.[4]

The lone exception appears to be Plaintiffs' retaliation claim brought against Defendant Davis for falsifying Plaintiff's classification records by stating on a grievance rejection form that Plaintiff had not been assigned a "Z" code in the past.  See ECF No. 23, ¶ 56.  The form to which Plaintiff refers, however, is dated February 21, 2008.  See ECF No. 1-44.  Because the allegedly retaliatory conduct that Davis engaged in occurred prior to May 24, 2009, Plaintiff's claim in this regard is time barred.

### 3.    Substantive Claims

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted).  Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color

---

[4] Although Plaintiff makes reference in the Amended Complaint to events that occurred in 2005 and 2006, these references appear only to provide background for his assertion that Defendant Winfield falsified a report on July 9, 2009.  See ECF No. 23, ¶¶ 45-51.

of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423.

Plaintiff in this case alleges that Defendants deprived him of his rights provided by the First, Eighth and Fourteenth Amendments to the United States Constitution.

### a.    Eighth Amendment Claims

Plaintiff alleges that while he was housed in the Restricted Housing Unit ("RHU") at SCI Greene between October 27, 2009 until December 23, 2009, and again from February 9, 2010 until May 4, 2010, he was given only half the portion of food as that being served to the inmates in the general population thereby violating his Eighth Amendment right to be free from cruel and unusual punishment. Defendants argue that they are entitled to summary judgment on Plaintiff's claim because the record established that the meals provided to Plaintiff were nutritionally adequate.

In order to establish an Eighth Amendment violation with respect to conditions of confinement, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted). Accordingly, "[t]he Eighth Amendment requires that prison officials serve 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Gregory v. Danberg, 2011 WL 4480445, at *5-6 (D. Del. Sept. 23, 2011), *quoting* Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980). See Duran v. Merline, ___ F. Supp. 2d ___, 2013 WL 504582, at *9 (D.N.J. Feb. 8, 2013). The United States Court of Appeals for the Third Circuit therefore has recognized that "only a substantial deprivation of

food to a prisoner sets forth a viable Eighth Amendment claim." <u>Lindsey v. O'Connor</u>, 327 F.

App'x 319, 321 (3d Cir. 2009), *citing* <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir. 1983).

Corrections officials, however, may not be held liable for failing to provide an inmate

with nutritionally adequate food unless the inmate shows both an objective component (that the

deprivation was sufficiently serious) and a subjective component (that the officials acted with a

sufficiently culpable state of mind). <u>Stevenson v. Carroll</u>, 495 F.3d 62, 68 (3d Cir. 2007), *citing*

<u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). Objectively, "[w]hether the deprivation of food falls

below this [constitutional] threshold depends on the amount and duration of the deprivation."

<u>Duran v. Merline</u>, 2013 WL 504582, at *9, *quoting* <u>Berry v. Brady</u>, 192 F.3d 504, 507 (5th Cir.

1999) (internal citation omitted). <u>See</u> <u>Robles v. Coughlin</u>, 725 F.2d at 15.

The evidence of record in this case fails to demonstrate a constitutional violation.

Defendants have submitted a declaration from Margaret Gordon ("Gordon"), a registered

dietician who has been employed by the DOC since October of 2000, in which she states that a

committee of food service managers/designees from all facilities, the central office food service

staff and/or the chief of food services develops a master menu for the entire DOC inmate

population. ECF No. 95-11, p. 2, ¶3. According to the DC-ADM 610 Food Service Policy,

"[t]he master menu is the DOC's four week rotating cycle of menus that establishes nutritionally

balanced meals that shall be served in any given week." <u>Id.</u> at p. 3, ¶ 4; p. 8, Section IV.D. As

the DOC's registered dietician, Gordon reviews and approves the master menu and verifies that

the menu meets or exceeds the dietary allowances as stated in the Recommended Dietary

Allowances, Food and Nutrition Board of the National Academy of Sciences and the

Department's Food Service Procedures Manual. Gordon further attests to the fact that the calorie

content of the master menu served at SCI Greene ranges from 2579 to 2700 calories per day

which actually exceeds those dietary allowances.  Id. at p. 3, ¶¶ 6-8; p. 19, Section 1.B.1.; ECF No. 95-12, p. 30.

In addition, according to DOC policy, a therapeutic diet is provided to address medically required diets as prescribed by a physician, physician's assistant, dentist or psychiatrist.  ECF No. 95-11, pp. 3-4, ¶ 9.  See ECF 95-12, p. 3, Section V.C.  Gordon declares that she approved and designed the non-standard therapeutic diet for Plaintiff on May 3, 2010, pursuant to DC-ADM 610, Section 2.C.4., and that the enhanced snack bag that Plaintiff consequently receives contains 900 to 1000 calories.  ECF No. 95-11, p. 4, ¶¶ 11, 12.  See ECF No. 95-12, pp. 32, 34.  Gordon states that Plaintiff's diet therefore exceeds the dietary allowances as stated in the Recommended Dietary Allowances, Food and Nutrition Board of the National Academy of Sciences.  ECF No. 95-11, p. 4, ¶ 13.

Defendants have also submitted a declaration from Defendant Wallace Dittsworth ("Dittsworth"), a Food Service Manager at SCI Greene, who states that he has overall supervision for the food production and service operations at the facility and that his duties include menu planning, purchasing, personnel, finance, nutritional care, food preparation, food service, and sanitation and safety; supervising Food Service Supervisors; and implementing training programs for food service personnel and inmates in the performance of preparation, production, food serving and sanitation.  ECF No. 95-6, p. 2, ¶¶ 1, 2.  Dittsworth asserts that SCI Greene provides the master menu developed by the food service committee and that, in compliance with DOC policy, inmates housed in the RHU at SCI Greene are served the same amount and type of food as inmates in the general population.  Id. at pp. 2-3, ¶¶ 3, 4.  See ECF No. 95-12, pp. 14-15, Sections 1.B.1-3; p. 4, Section VI.B.2.  Further, Dittsworth states that he is responsible for ensuring that standard size portions of all food items are provided to inmates and

that pre-portioned utensils are utilized to serve food in order to ensure that inmates receive equal portions of food. ECF No. 96-6, p. 3, ¶¶ 5, 6. See ECF No. 95-12, p. 16, Section 1.C.7. Dittsworth also attests to the fact that Plaintiff has been on the master menu diet at SCI Greene since 2005, and that he has received either a daily enhanced snack bag or basic snack bag since 2008. ECF No. 95-6, p. 3, ¶¶ 7, 9, 11. Indeed, the Heart Healthy Therapeutic Diet Order Forms attached to Dittsworth's declaration show that Plaintiff has been medically approved for a daily snack pack since June 3, 2008, through May 22, 2013. ECF No. 95-6, pp. 35-45. This evidence appears to belie any assertion that Plaintiff is suffering from a substantial deprivation of food or that Defendants have acted with a sufficiently culpable state of mind.

Plaintiff has nevertheless submitted affidavits from six other inmates in which they attest to the fact that the portions of food served in the RHU at SCI Greene are half the size of the portions served in general population. This evidence, however, fails to create genuine issue for trial so as to overcome summary judgment. Not only do claims of insufficient food portions fail to give rise to an Eighth Amendment claim, but there is no evidence that the meals received by these prisoners or Plaintiff were nutritionally inadequate. See Gregory v. Danberg, 2011 WL 4480445, at *5-6 (finding that the plaintiff's testimony that the food portions were small insufficient to overcome summary judgment where there was no evidence that they were nutritionally inadequate); Brown v. Martinez, 2007 WL 2225842, at *8 (M.D. Pa. July 31, 2007) ("[i]t is not enough for a prisoner to allege that his food portions were inadequate. There must be more in the way of evidence of deleterious impact of a prolonged deficient diet"); Kot v. Matty, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992) (table) ("small food portions is not a cognizeable claim under § 1983"). Under these circumstances, no reasonable jury could conclude that Plaintiff was being denied the minimal civilized measure of

life's necessities or that Defendants acted with deliberate indifference to his health or safety.

Defendants, therefore, are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

**b.     Fourteenth Amendment Due Process Claims**

**(1)     Misconduct Hearings**

Plaintiff also alleges that Defendants violated his rights provided by the Fourteenth Amendment relative to two misconducts he received on October 27, 2009, and February 19, 2010, respectively.  In particular, Plaintiff alleges that he was denied due process at the misconduct hearings that followed in that Defendants denied his requests to view the relevant security videotapes which, according to Plaintiff, would show where he was during the two incidents that precipitated the misconducts, and that he was not permitted to call a witness at the second misconduct hearing.  ECF No. 23, ¶¶ 8, 9, 16.

It is undisputed that "[p]risoners ... may not be deprived of life, liberty or property without due process of law," and that a prisoner facing the deprivation of a constitutionally cognizable liberty interest following an administrative hearing has a due process right to certain procedural protections.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Specifically, at a prison disciplinary hearing, due process requires that the inmate: (1) appear before an impartial decision-making body; (2) be given not less than 24 hours written notice of the charges against him; (3) be afforded the opportunity to call witnesses and present documentary evidence; (4) be permitted assistance from an inmate representative; and (5) receive a written decision explaining the decision-maker's conclusions.  Id. at 563–71.

It is also undisputed, however, that an inmate's due process rights are not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 483–84 (1995) (holding that not all

sanctions resulting from prison disciplinary hearings affect protected liberty interests).  See

Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170-71 (3d Cir. 2011).  The United States Court of

Appeals for the Third Circuit has specifically held that imposing a sanction of up to nine months

in the RHU does not constitute an atypical and significant hardship under Sandin.  Crosby v.

Piazza, 2012 WL 641938, at *3-4 (3d Cir. Feb. 29, 2012) (a total of 270 days in the RHU after

being found guilty of both misconducts does not constitute an atypical and significant hardship

under Sandin); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months

disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in

Sandin"); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (finding that fifteen months in

segregation was not an atypical and significant hardship).

        Plaintiff has alleged that he was sanctioned to sixty and ninety days, respectively, after

being found guilty of the two misconducts.  ECF No. 23, ¶ 4.  Clearly, under Third Circuit

jurisprudence, Plaintiff's disciplinary confinement does not constitute an atypical and significant

hardship in relation to the ordinary incidents of prison life.  As such, Plaintiff's liberty interests

were not implicated and his right to due process at the misconduct hearing was not triggered in

the first instance.  Defendants, therefore, cannot be found liable for violating Plaintiff's rights

provided by the Fourteenth Amendment.

        The Court notes here that, to the extent that Plaintiff complains that the misconducts were

falsified, it is well settled that a prisoner does not have a procedural or substantive due process

right to be free from being falsely or wrongly accused of conduct that may result in the

deprivation of a protected liberty interest.  Smith v. Mensinger, 293 F.3d at 653-54, *citing with*

*approval* Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986).  See Gravley v. Beard, 2010

WL 3829370, at *4 (W.D. Pa. Aug. 31, 2010), *R&R adopted as Opinion of the Court in* 2010

WL 3829434 (W.D. Pa. Sept. 23, 2010).  Thus, Plaintiff's allegations of false misconducts do not

serve to resurrect his due process claims.

(2)      <b>Confiscated Property</b>

Plaintiff alleges that Defendants violated his rights provided by the Fourteenth

Amendment when they "stole" some of his personal property, including legal materials, when he

was placed in the RHU in October of 2009.  Plaintiff also complains that Defendants did not

permit him to have any of his property in his cell for the 60 days he was confined to the RHU

because he refused to sign the inventory sheet indicating that all of his property had been

accounted for.  Because DOC Policy does not provide that an inmate may not have access to his

property when he refuses to sign the inventory sheet, Plaintiff contends that he has been

deprived of his property without due process.

The unauthorized intentional deprivation of property by a prison official, as has been

alleged here, however, does not violate the Due Process Clause where the inmate has a

meaningful post-deprivation remedy available to him.  Monroe v. Beard, 536 F.3d 198, 210 (3d

Cir. 2008), *quoting* Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Thus, in order to succeed on a

due process claim, an inmate must not only show that his property was confiscated but that he

was not afforded a post-deprivation administrative remedy.  Ball v. Campbell, 2011 WL

7080692, at *7 (M.D. Pa. Dec 9, 2011), *R&R adopted as the Opinion of the Court in* 2012 WL

201846 (M.D. Pa. Jan. 23, 2012).  The United States Court of Appeals for the Third Circuit has

found that adequate post-deprivation remedies include the ability to file a state tort action or use

of the prison's grievance process.  Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010); Tillman

v. Lebanon Cnty. Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000).  The existence of either of these

post-deprivation remedies therefore "forecloses any due process claim . . . even if [the] inmate is

13

dissatisfied with the result of the process." Iseley v. Horn, 1996 WL 510090, at * 6 (E.D. Pa.

Sept. 3, 1996), citing Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995). See Pettaway v.

SCI Albion, 2012 WL 366782, at *3-4 (W.D. Pa. Feb. 2, 2012).

Here, it is clear from the record that Plaintiff not only had the prison grievance process

available to him but that he, in fact, filed two grievances regarding the alleged deprivation of his

property. See ECF No. 95-14, pp. 13-36; ECF No. 95-15, pp. 2-19. Although Plaintiff may not

be satisfied with the results of the grievances he filed or the corresponding appeals, he

nevertheless had access to an adequate post-deprivation remedy. It therefore cannot be said that

he was denied the right to due process of law.[5]

### c. First Amendment Claims

### (1) Access to the Courts

As previously discussed, Plaintiff alleges in the Amended Complaint that his "legal

briefs, legal transcripts and photo copies of grievances and responses" were stolen when he was

placed in the RHU on October 27, 2009. ECF No. 23, ¶ 20. See ECF No. 95-14, p. 13. Plaintiff

claims that he needs his legal materials to have access to the courts and, in particular, that the

absence of the transcripts hindered him from filing a PCRA Petition in his criminal homicide

case in the Court of Common Pleas of Philadelphia County. ECF No. 23, ¶¶ 33, 85.

An incarcerated prisoner, like any other citizen, has a constitutionally protected right of

access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The United States Supreme

---

[5] Although Plaintiff points to an Inmate Property Tracking form, which was also submitted by Defendants in
conjunction with their Motion, to support his assertion that his property was stolen, the form does not create a
material issue of fact with respect to Plaintiff's due process claim. See ECF No. 95-14, p. 14; ECF No. 99-15, p. 1.
Notwithstanding the indication on the form that some unidentified "items" belonging to Plaintiff were not properly
secured when he was placed in the RHU, the fact that certain property was unsecured does not evidence that it was
stolen. More importantly, however, the issue is whether Plaintiff was deprived of due process and not whether
Defendants confiscated Plaintiff's property in the first instance. Similarly, the fact that there is no DOC Policy
which states that an inmate may not have access to any of his property if he refuses to sign the inventory form, does
not negate the fact that Plaintiff had available, and took advantage of, a post-deprivation remedy by filing two
grievances.

Court has established that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an "actual injury" as a result of the alleged denial. Id. at 349. See Dunbar v. Barone, 487 F. App'x 721, 724 (3d Cir. 2012). "Actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." Fortune v. Hamberger, 379 F. App'x 116, 120 (3d Cir. 2010), *quoting* Christopher v. Harbury, 536 U.S. 403, 415 (2002). See Dunbar v. Barone, 487 F. App'x at 724; Atwell v. Lavan, 557 F. Supp. 2d 532, 558-59 (M.D. Pa. 2008), *aff'd*, 366 F. App'x 393 (3d Cir. 2010) (proof of actual injury caused by virtue of absence of records is required).

Plaintiff here has failed to point to any evidence from which it could be inferred that he suffered an actual injury as the result of being denied his "legal materials." In his Brief and Declaration filed in opposition to Defendants' instant Motion, ECF No. 99; ECF No. 99-1, Plaintiff merely reiterates that his legal briefs, legal transcripts and photocopies of his grievances and responses to the grievances were missing and again points to the Inmate Property Tracking form indicating that not all of his items were secured as evidencing that his legal materials were stolen. See ECF No. 95-14, p. 14. Whether or not Plaintiff's legal materials were stolen, confiscated or merely missing, however, does not by itself suggest that a "nonfrivolous and arguable claim" was lost to Plaintiff as a result. The closest Plaintiff comes to addressing any injury is his present assertion that "defendants stole [the] transcripts he was using in filing his PCRA Petition in regards to his First Degree Murder Conviction." ECF No. 99, p. 13.[6]  See

---

[6] Plaintiff testified at his deposition that it was the transcript of his third degree murder conviction that was taken, ECF No. 95-2, pp. 21, 57, but now asserts that he merely said that it was his "Third degree Transcripts" that were taken at his deposition because "it appeared that the attorney was trying to get [him] to say what his strategy was in regards to his First Degree Murder Conviction" and Plaintiff did not want to tell him. ECF No. 99, p. 13. Nevertheless, the record shows that Plaintiff was sentenced in July of 1987 for third degree murder and has never filed a PCRA Petition. ECF No. 95-17, pp. 2-4. Moreover, the docket sheet shows that there was nothing pending

ECF No. 23, ¶ 85.  Plaintiff, however, has submitted the first page of a Memorandum and Order issued in his first degree murder case by Judge Woods-Skipper of the Court of Common Pleas of Philadelphia County, which indicates that Plaintiff filed a PCRA Petition in that case on January 3, 1991, and that it was dismissed on March 19, 1993.  ECF No. 99-36, p. 1.[7]  Plaintiff also appears to have submitted a second and third PCRA Petition on September 13, 2010, and April 16, 2012, respectively.  ECF No. 95-16, p. 22.  Under these circumstances, it cannot be said that Plaintiff was denied access to the courts with respect to his first degree murder conviction particularly where he has failed to identify any particular issue, nonfrivolous or otherwise, that he was unable to raise or that was lost to him.

Lastly, as argued by Defendants, Plaintiff testified at his deposition that the briefs that were taken from him were copies of briefs that had already been filed and that he was able to replace the copies of the grievances that were taken.  ECF No. 95-2, pp. 22, 58-59.  Plaintiff has not addressed Defendants' argument in this regard or offered any evidence to the contrary.  Thus, the record is devoid of any evidence from which a reasonable jury could conclude that Plaintiff suffered an actual injury because copies of his legal briefs and grievances were missing and Defendants, consequently, are entitled to summary judgment on Plaintiff's First Amendment access to the courts claim.

---

in that case and no action needed to be taken while Plaintiff was held in the RHU between October 27, 2009 and December 23, 2009, or anytime thereafter.  Id.

[7] The Court notes that the Docket Sheet from Plaintiff's first degree murder case does not reflect that a PCRA Petition was filed on January 3, 1991.  ECF No. 95-16, p. 22.

### (2)     Retaliation

Plaintiff alleges that, in retaliation for filing various lawsuits and grievances, Defendants filed false misconducts against him; took his legal materials; falsified his medical records; and falsified his records regarding his Z Code status.

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under Section 1983. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Merely alleging the fact of retaliation, however, is insufficient. Rather, to prevail on a retaliation claim, a plaintiff must show that: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). See Rauser v. Horn, 241 F.3d at 333 (the constitutionally protected conduct must be "a substantial or motivating factor" in the decision to discipline the inmate). A causal connection between the protected conduct and the adverse action may be established by showing that there is a temporal proximity between the plaintiff's protected activity and the defendants' adverse action. The timing of the alleged retaliatory conduct, however, must be suggestive of a retaliatory motive. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003), *citing* Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (holding that the temporal proximity between the protected conduct and the

alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link).

Once these criteria are met, the burden shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser v. Horn, 241 F.3d at 333. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, Defendants do not take issue with the first two prongs of the retaliation analysis but argue only that Plaintiff is unable to establish the third prong or that there is a causal connection between the protected activities engaged in by Plaintiff and the adverse actions taken by Defendants.[8] The Court agrees.

---

[8] Plaintiff has seemingly satisfied the first two prongs of the analysis having alleged in the Amended Complaint that he "filed a civil complaint, grievance and criminal complaint against Superintendent Folino and Staff, and a Security Captain, Thomas Dohman from SCI Graterford;" that he "filed a private criminal complaint against SCI Greene's Mail Supervisor for forgery;" that Defendant Swartz acted in "retaliation to grievances and the law suit that I have filed against her;" that Defendant Wilcher acted in "retaliation for Superintendent Folino and Captain Thomas Dohman of SCI Graterford because I filed a law suit against both of them;" and that as a result Defendants filed false misconducts against him, confiscated his legal materials; and falsified classifying documents concerning his Z Code status. ECF No. 23, ¶¶ 2, 54, 59, 86.

## (a) False misconducts

Plaintiff alleges that Defendant Col. Harkleroad ("Harkleroad"), in conjunction with

Defendants Col. Gifford ("Gifford") and Col. Moore ("Moore"), issued two false misconducts

against him and that the falsity was perpetuated by Defendants F. Nunez ("Nunez"), Folino,

Robert B. MacIntyre ("MacIntyre"), Susan Cowan ("Cowan"), Robert Dietz ("Dietz"), Mike

Ivan ("Ivan"), M. Dialesandro ("Dialesandro") and Vidonish through the appeal process and

grievance process that followed. Plaintiff alleges in the Amended Complaint that the false

misconducts were initiated because he filed "a civil complaint, grievance and criminal complaint

against Superintendent Folino and Staff, and a Security Captain, Thomas Dohman from SCI

Graterford." ECF No. 23, ¶ 2.[9]

Plaintiff, however, does not identify the lawsuits or grievances he purports to have filed

against "Superintendent Folino and Staff" or when they were filed. Nor has Plaintiff offered any

evidence that any of the Defendants, other than perhaps Folino, were aware that any such suit

had been filed or that would otherwise support a finding that the Defendants were substantially

motivated to act as they did because of Plaintiff's alleged complaints.

Further, with respect to the lawsuit that Plaintiff filed against Captain Thomas Dohman at

SCI Graterford, Defendants, who are all employed at SCI Greene, have submitted declarations in

which they all attest to the fact that they do not know Captain Dohman and had no knowledge

---

[9] In his Brief in Opposition to Defendants' Motion for Summary judgment, Plaintiff generally states that the misconducts were issued against him for filing "lawsuits against prison officials within the DOC specifically, Capt. Thomas Dohman of SCI Graterford, previous lawsuits against Defendants listed in this complaint." ECF No. 99, p. 9. The only other complaints or lawsuits filed by Plaintiff that are mentioned in the Amended Complaint are a "private criminal complaint" purportedly filed against the mail supervisor at SCI Greene and a lawsuit Plaintiff filed against Defendant Swartz. ECF No. 23, ¶¶ 54, 59. The lawsuit filed against Defendant Swartz, however, appears to be particular to Plaintiff's retaliation claim brought against Swartz regarding the falsification of his classification documents and is discussed below. With respect to a criminal complaint lodged against SCI Greene's mail supervisor, Exhibit 1 attached to Plaintiff's Amended Complaint shows that the Office of the District Attorney of Greene County declined to approve the complaint thereby precluding a finding that Plaintiff engaged in protected activity. ECF No. 1-1. Moreover, Plaintiff has not pointed to any evidence that any of the Defendants were aware of any complaints, formal or informal, that Plaintiff may have had about the mail supervisor and, thus, has failed to establish a causal connection between those complaints and any adverse actions taken against him.

that Plaintiff had filed a lawsuit against him.  See ECF No. 95-3, p. 6, ¶ 5; ECF No. 95-3, p. 10, ¶ 3; ECF No. 95-3, p. 14, ¶ 10; ECF No. 95-3, p. 20, ¶10; ECF No. 95-3, p. 25, ¶ 14; ECF No. 95-4, p. 4, ¶ 10; ECF No. 95-9, p. 7, ¶ 7; ECF No. 95-9, p. 11, ¶ 7; ECF No. 95-9, p. 16, ¶ 13; ECF No. 95-9, p. 26, ¶ 8.

It is critical to note the lack of temporal proximity between the filing of the Dohman lawsuit and the two misconducts.  The record shows that Plaintiff filed the lawsuit against Dohman on October 30, 2006.  ECF No. 95-17, pp. 6-7.  The two misconducts at issue were filed against Plaintiff on October 27, 2009, and February 19, 2010, respectively.  The three year gap between Plaintiff filing the lawsuit and Defendants issuing the misconducts precludes a finding that there is a causal connection between the two events.  The time gap coupled with Plaintiff's failure to offer any other evidence from which a causal connection could be inferred, entitles Defendants to summary judgment.

**(b)      Confiscated Legal materials**

Plaintiff alleges that Defendant Col. Wilcher ("Wilcher") "stole" his legal materials when he was placed in the RHU in October of 2009 "in retaliation for Superintendent Folino and Captain Thomas Dohman of SCI Graterford because [he] filed a lawsuit against both of them." ECF No. 23, ¶¶ 20, 86.

As previously discussed, however, Plaintiff has not only failed to identify the lawsuit he filed against Folino or offered any support for finding that Defendants were aware that a suit had been filed, but he has otherwise failed to offer any evidence from which it could be concluded that his legal material were confiscated because of any lawsuit he filed against Folino.

Further, not only has Wilcher, as well as the other Defendants, attested to the fact that he was unaware of the lawsuit filed against Dohman, but the intervening three years between

Plaintiff filing a lawsuit against Dohman and the alleged confiscation of Plaintiff's legal materials seemingly precludes a finding that there was a causal connection between the two events.

### (c)     Falsifying medical records

Plaintiff also alleges in the Amended Complaint that Defendant Dr. Yanak ("Yanak"), became "part of the retaliation against [him]" by falsifying his medical records, having stated that Plaintiff had never been diagnosed as having Post Traumatic Stress Disorder ("PTSD"). ECF No. 23, ¶ 40.  Yanak, however, has also submitted a declaration in which reiterates that he found no diagnosis of PTSD in Plaintiff's medical records and did not falsify any documentation relating to Plaintiff.  Id.  Plaintiff has offered no evidence to the contrary and, thus, the record is devoid of any evidence from which a fact-finder could conclude that Yanak falsified Plaintiff's medical records or that he retaliated against Plaintiff by doing so.  Moreover, although Plaintiff does not specifically link Yanak's alleged falsification of Plaintiff's medical records to any particular conduct engaged in by Plaintiff, to the extent Plaintiff basis his claim of retaliation on the lawsuits he filed against Folino and Staff and Captain Dohman, his claims fail for the same reasons his other claims of retaliation fail as discussed above.

### (d)     Falsifying classification documents

Defendants argue that they are entitled to summary judgment on Plaintiff's claims that Defendants Major Lorinda Winfield ("Winfield"), Paul Palya ("Palya") and Swartz retaliated against him by falsifying his classifications records to prevent him from obtaining Z Code status.[10]  Specifically, Plaintiff contends that Winfield lied in the initial review she issued on July 9, 2009, in response to a grievance Plaintiff filed on July 7, 2009, wherein she stated that "[i]n

---

[10] Z Code is a classification that indicates an inmate requires a single cell and is determined from a number of factors including medical and psychological reasons.  See ECF No. 95-4, p. 8, ¶ 5; ECF No. 95-7, pp. 1-2, ¶ 4; ECF No. 95-7, p. 7, ¶ 4.

2005 you were staffed for a Z code and were denied." ECF No. 23, ¶ 43. <u>See</u> ECF 1-35, p. 1. With respect to Defendants Palya and Swartz, Plaintiff merely alleges that they falsified unidentified records raising his classification level in order to retaliate against him. ECF No. 23, ¶¶ 58, 59.

Notably, Plaintiff has not addressed Defendants' argument in this regard in his Brief in Opposition to Defendants' Motion for Summary Judgment and, thus, has apparently conceded the issue. <u>See</u> ECF No. 99. Indeed, the record appears devoid of any evidence of a retaliatory motive by any of these defendants.

Although it is not entirely clear from the Amended Complaint what protected activity Plaintiff claims he engaged in that precipitates his claims of retaliation against Winfield, Palya and Swartz, Plaintiff testified at his deposition that Defendants altered his classification level "'cause of Captain Dohman at Graterford." ECF 95-2, pp. 21-22. Defendants Winfield, Palya and Swartz, however, have also submitted declarations in which they have stated that that they do not know Captain Dohman, have no knowledge of any lawsuit Plaintiff may have filed against him and that no such lawsuit was a motivating factor in any decision they may have made in regards to Plaintiff. ECF No. 95-4, p. 8, ¶ 10; ECF No. 95-7, p. 2, ¶ 9; ECF No. 95-7, p. 7, ¶ 14.

To the extent that Plaintiff has alleged that Swartz retaliated against him because of lawsuits and grievances he has filed against her, he has against failed to point to any evidence establishing a causal connection between any two events. Plaintiff has failed to identify any particular lawsuits in which Swartz was named as a defendant or when they were filed in relation to Swartz having allegedly falsified his classification documents. Although Swartz herself has identified two such suits, there does not appear to be any relation between the filing of those

lawsuits and any action Swartz took with respect to Plaintiff's Z Code classification. The first suit was filed in this Court on May 2, 2008. <u>See</u> *Mearin v. Vidonish*, C.A. 2:08-cv-597. Plaintiff, however, claims that Swartz's retaliatory actions took place in June of 2009 and thereafter -- over one year later -- which is not in temporal proximity and does not evidence a retaliatory motive. The second lawsuit, *Mearin v. Swartz*, CA. 2:11-cv-669, also filed in this Court, was filed on May 9, 2011, almost two years after Swartz allegedly retaliated against him. The filing of the lawsuit, therefore cannot provide the basis for Plaintiff's retaliation claims brought against Swartz.

Similarly, the only grievances filed against Swartz that Plaintiff has referred to in the Amended Complaint are grievances he filed on June 12, 2009, June 26, 2009, and on July 7, 2009. The record shows that these grievances revolve around Plaintiff's complaints that Swartz denied him Z Code status by placing him in cells with other inmates in retaliation for the lawsuits he filed. ECF No. 23, ¶ 63. <u>See</u> ECF Nos. 99-24, pp. 4-6. It therefore appears that Swartz's conduct with respect to Plaintiff's classification and Z Code status predates the grievances he filed against her thereby precluding a finding that her conduct was in response to those grievances.

Moreover, despite Plaintiff's protestations to the contrary, Defendants have submitted evidence demonstrating that there is no prohibition on housing inmates taking medication for psychological issues with other inmates; that Plaintiff has been housed with other inmates for a significant period of time without significant incident; and, more importantly, that Plaintiff simply does not qualify for Z Code status. ECF No. 95-4, p. 8, ¶¶ 6- 8; ECF No. 95-7, p. 3, ¶¶ 5-7; ECF No. 95-7, p. 8, ¶¶ 5-7. Indeed, Palya has indicated that inmates are categorized a level depending on institution history and adjustment records and that Plaintiff has been a custody

level 4 or 5 since 2006 due, in part, to his escape risk status so that his custody level is overridden to a custody level 4. ECF No. 95-7, p. 8, ¶¶ 6, 8. Further, in response to a grievance that Plaintiff filed in November of 2009 regarding his Z Code status, it was noted that Plaintiff's counselor, Mr. Costello, who is not a defendant in this action, stated that Plaintiff's health conditions "are not part of the criteria for obtaining a Z-Code." ECF No. 95-10, p. 9.

Finally, Palya has attested to the fact that he did not assign Plaintiff his custody level or put him on the escape risk list and has not falsified any of Plaintiff documentation. ECF No. 95-7, p. 8, ¶¶ 12, 13. Although it appears that Defendants Winfield and Swartz had input into Plaintiff's classification status and cell assignments, Plaintiff has not offered any evidence to connect those decisions to the lawsuit Plaintiff filed against Dohman, Folino or even that filed against Swartz. Under these circumstances, no reasonable juror could conclude that Winfield, Palya or Swartz falsified his classification documents or retaliated against him by denying his requests for Z Code status. Defendants therefore are entitled to summary judgment.[11]

## C.   CONCLUSION

For the foregoing reasons, is respectfully recommended that the Motion for Summary Judgment submitted on behalf of Defendants, ECF No. 94, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing

---

[11] Having found that Defendants are entitled to summary judgment on all of Plaintiff's claims the Court need not , and has not, addressed Defendants' final argument that Plaintiff has otherwise failed to allege personal involvement on the part of some of the Defendants.

objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: July 8, 2013

cc:     The Honorable
        United States District Judge Nora Barry Fischer

        Thurman Mearin
        AM-8063
        SCI Greene
        175 Progress Drive
        Waynesburg, PA 15370

        All counsel of record via ECF